# EXHIBIT 1

EVELYN SAMPLE-OATES,

                    Plaintiff,

    v.

  THE SCHOOL DISTRICT OF PHILADELPHIA;
LARISA SHAMBAUGH; WILLIAM HITE, JR.;
TONY B. WATLINGTON, SR.; JAYME
NABEREZNY; REGINALD L. STREATER, ESQ.;
JOYCE WILKERSON; and ALICIA PRINCE,

                Defendants.



**COURT OF COMMON PLEAS
PHILADELPHIA COUNTY**

**CIVIL ACTION
April Term, 2023**

**No. 01266**

---

**NOTICE**

      You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

      YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-1701

**AVISO**

      Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

      LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-1701

By: J. Edward McCain, III
Attorney ID No. 85419
1628 Pine Street,
Philadelphia, PA 19103
267-857-0854
edward@dereksmithlaw.com

| | |
|---|---|
| EVELYN SAMPLE-OATES,<br><br>                                Plaintiff,<br><br>        v.<br><br> THE SCHOOL DISTRICT OF PHILADELPHIA;<br>LARISA SHAMBAUGH; WILLIAM HITE, JR.;<br>TONY B. WATLINGTON, SR.; JAYME<br>NABEREZNY; REGINALD L. STREATER, ESQ.;<br>JOYCE WILKERSON; and ALICIA PRINCE,<br><br>                                Defendants. | **COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY**<br><br>**CIVIL ACTION**<br>**April Term, 2023**<br><br>**No. 01266** |

<u>**PLAINTIFF'S FOURTH AMENDED COMPLAINT**</u>

Plaintiff, Evelyn Sample-Oates, by and through her attorneys, Derek Smith Law Group,

PLLC., in response to Defendants Preliminary Objections, files this Fourth Amended Complaint.

This Complaint sufficiently addresses Defendants' Preliminary Objections and hereby avers as

follows:

This is a civil action seeking compensatory, punitive, and non-pecuniary damages based

on race, sex, and age discrimination, and retaliation in violation of 42 U.S.C § 1981, the

Pennsylvania Human Relations Act (PHRA), and the Philadelphia Fair Practices Ordinance

(FPO). This case was investigated by the Philadelphia Commission on Human Relations.

<u>**PARTIES**</u>

1.   Plaintiff, Evelyn Sample-Oates, a Pennsylvania resident, is an African American female over

the age of 40, and resides at 179 Birkdale Drive, Blue Bell, PA 19422.

2. Defendant, The School District of Philadelphia ("Defendant SDP"), is located at 440 N. Broad Street, Philadelphia, PA 19130

3. At all times material, Defendant School District of Philadelphia was and still is a government agency that controls all sectors of public education.

4. Defendant Larisa Shambaugh ("Defendant Shambaugh") is the former Chief Talent Officer of the School District of Philadelphia, located at 440 North Broad Street, Philadelphia, PA 19130.

5. At all times material, Defendant Shambaugh held a supervisory position over Plaintiff.

6. Defendant Dr. William Hite, Jr. ("Defendant Hite") is the former Superintendent of the School District of Philadelphia and resides at 901 North Penn Street, Philadelphia, PA 19123.

7. At all times material, Defendant Hite held a supervisory position over Plaintiff.

8. Defendant Dr. Tony B. Watlington, Sr. ("Defendant Watlington") is the current Superintendent of the School District of Philadelphia located at 440 North Broad Street, Philadelphia, PA 19130.

9. At all times material, Defendant Watlington held a supervisory position over Plaintiff.

10. Defendant Jayme Naberezny ("Defendant Naberezny") is employed by the Office of Inspector General of the School District of Philadelphia, located at 440 North Broad Street, Philadelphia, PA 19130.

11. At all times material, Defendant Naberezny held a supervisory position over Plaintiff.

12. Defendant Reginald L. Streater, Esq. ("Defendant Streater") is the Board President of the School District of Philadelphia, located at 440 North Broad Street, Philadelphia, PA 19130.

13. At all times material, Defendant Streater held a supervisory position over Plaintiff.

14. Defendant Joyce Wilkerson ("Defendant Wilkerson") is the former Board President and current Board member of the School District of Philadelphia, located at 440 North Broad Street, Philadelphia, PA 19130.

15. At all times material, Defendant Wilkerson held a supervisory position over Plaintiff.

16. Defendant Alicia Prince ("Defendant Prince"), an African American woman under the age of forty (40), is the former Chief of Staff of the School District of Philadelphia and resides at 7648 Woodbine Avenue, Philadelphia, PA 19151.

17. At all times material, Defendant Prince held a supervisory position over Plaintiff.

## **JURISDICTION AND VENUE**

18. This court has original jurisdiction of all civil actions arising under the Pennsylvania Constitution, law, or treaties of the commonwealth pursuant to the Pennsylvania Human Relations Act (PHRA) and the Philadelphia Fair Practices Ordinance (FPO).

19. The relevant portions of this action have been administratively processed with the Philadelphia Commission on Human Relations (PCHR).

20. One year has lapsed since Plaintiffs claims were filed with the PCHR and Right to Sue Letters from the EEOC have been received thus exhausting any administrative requirements necessary to file Plaintiff's claims in court.

21. This action has been timely filed and has met all conditions precedent.

22. Venue is proper because Defendants conduct business, are or were employed in Philadelphia and the incidents comprising this Complaint occurred in Philadelphia.

## **STATEMENT OF FACTS**

23. In or around August 2009, Plaintiff began working for Defendant SDP as Chief
    Communications Officer.

24. In or around September 2012, Plaintiff was promoted to Chief of Family & Community
    Engagement.

25. Around that time, Plaintiff was given a fleet vehicle and 7-day 24-hour use permission of
    this vehicle by the Superintendent, Defendant Hite.

26. On or about April 2015, Plaintiff became the Executive Director of Government Affairs
    and External Relations for Defendant SDP.

27. As an Executive Director, Plaintiff was on call for work at all hours including evenings,
    weekends, and holidays.

28. At no time during her tenure did Plaintiff work normal business hours of 9 to 5 for
    Defendant SDP.

29. At no time during her tenure was Plaintiff ever informed, trained, or provided with a
    company policy regarding use of the fleet vehicle, nor was Plaintiff *ever* penalized for
    improper use of said fleet vehicle.

30. Before her constructive discharge, Plaintiff was never told to return a vehicle or
    questioned about her use of a fleet vehicle.

31. Regularly, there were instances where Plaintiff needed to travel via fleet vehicle to
    address issues as Executive Director of Government Affairs and External Relations.

32. During the course of her employment, Plaintiff was recognized as an exemplary
    employee on a regular basis, as is clear through her multiple promotions referenced
    above.

33. On or about May 2021, a meeting was held by Defendant Prince with Plaintiff and a Human Resource representative. All meetings before this date were held between the parties as one-on-one.

34. This meeting consisted of a discussion regarding the recent inauguration of President Joe Biden and Vice-President Kamala Harris.

35. As the Director of Government Affairs and External Relations, attending political events was always part of Plaintiff's job responsibilities.

36. During the meeting Defendant Prince scolded and reprimanded Plaintiff for participating in the inauguration. This was done in front of the HR representative.

37. This scolding was done deliberately to embarrass and humiliate Plaintiff.

38. As the Chief of Staff, Defendant Prince was aware her position would be replaced by the new Superintendent, Defendant Watlington.

39. Based on knowledge and information, it was clear that Ms. Prince wanted Plaintiff removed from her position due to her age. Her intent was to hire someone younger, including herself, to serve as Executive Director of Government Affairs Advocacy and External Affairs.

40. Not surprisingly, Defendant Prince, prior to being replaced, hired a younger, Caucasian woman to do the job of Director of Government Affairs, while Defendant Prince assumed the role of Executive Director herself.

41. After the May 2021 meeting, Plaintiff complained to Superintendent, Defendant Hite of Defendant Prince's hostile and discriminatory behavior. Defendant Hite assured the Plaintiff the situation would be handled.

42. Following her complaint to Defendant Hite, Plaintiff was instructed by Defendant Prince not to speak at public events without Defendant Prince's knowledge and/or permission, and told these responsibilities were now to be executed by herself instead of Plaintiff.

43. On February 11, 2022, without warning, explanation or reasoning, Plaintiff was informed by Defendant Prince that she would be suspended without pay and recommended for termination at the next scheduled Board of Education hearing. (See attached).

44. Defendant Princes actions were intended to aid and abet Defendants in their violations of PHRA and FPO.

45. The letter was signed and approved by Defendant Larisa Shambaugh. (See attached).

46. Defendant Shambaugh's actions were intended to aid and abet Defendants in their violations of PHRA and FPO.

47. The Board of Education, as represented by Defendants Watlington, Streater and Wilkerson, actions were intended to aid and abet Defendants in their violations of PHRA and FPO.

48. These actions of Defendants as described above were acting outside the scope of their employment.

49. Plaintiff was shocked and appalled. Throughout her entire tenure, Plaintiff had never received a negative review, any write-ups concerning her work performance, or any other type of disciplinary action.

50. Plaintiff was given *no reason or explanation* for her pending suspension or recommendation for termination by her supervisors.

51. After requesting an explanation for the disciplinary action *multiple* times, Plaintiff was finally informed by Defendant Hite that there was a "*pretty bad*" report regarding her

Case ID: 230401226

fleet vehicle use. Defendant Hite told Plaintiff that said report was *so egregious* that she

should resign before being terminated. Plaintiff was also instructed to request a copy of

the report but was not provided with one by Defendant Hite. (See attached).

52. By Defendant Hite's own admissions, his actions were not within the scope of his

authority. (See attached).

53. Defendant Hites actions were intended to aid and abet Defendants in their violations of

42 U.S.C. § 1981, PHRA, and the FPO.

54. Accordingly, Plaintiff **did** request a copy of the report three times via email; to which

there was *no response*. To date, Plaintiff has ***never*** received a copy of the report from

Defendants.

55. Plaintiff was ***never*** formally informed by defendants as to the reason for her alleged

upcoming suspension, or alleged recommendation for termination by the school board.

56. Instead, Plaintiff was coerced into believing that the report contained salacious company

violations worthy of termination for cause.

57. Not until after she involuntarily resigned did Plaintiff learn that the report contained

many falsehoods and derogatory, defamatory statements regarding Plaintiff's job

performance.

58. Plaintiff was also informed by a colleague that Defendants had willfully and intentionally

*published* this defamatory report on a *public website*.

59. Based on investigation and information, the defamatory report was published by

Defendant Jayme Naberezny.

60. Publishing this false report, which contained private and personal information, on a public website, was ***not*** within the course of Naberezny's official duties or within the scope of her authority.

61. The publication of this false report on a public website was meant to cause Plaintiff humiliation, embarrassment, to defame her distinguished career, and to support her constructive discharge and wrongful termination.

62. Defendant Hite stated this in his text to Plaintiff to cause her to resign.

63. More specifically, the report claimed that Plaintiff violated company policy regarding misuse of the fleet vehicle outside of working hours, and that her job consisted of normal working hours of 9am -5pm, resulting in "stolen time".

64. As indicated above, each of these claims is patently false.

65. As furtherance in his intention to cause Plaintiff to resign, and outside his scope as Superintendent, Defendant Hite coerced the other named Defendants to "accept her resignation" in lieu of termination.

66. As Board members and Presidents, Defendants Wilkerson and Streater aided and abetted Defendant Hite in his unlawful misconduct.

67. At all times relevant to this complaint, Defendants acted outside the scope of their official duties, which would have been to provide Plaintiff with due process.

68. Defendant Naberezny's actions were intended to aid and abet Defendants in their violations of PHRA and FPO.

69. Additionally, Defendant Naberezny's actions were not within the scope of her official duties.

70. Moreover, such claims are discriminatory as they represent disparate treatment.

71. It is not within the scope of any employee's official duties to discriminate or treat another employee disparagingly because of her sex, race, or age.

72. It is well known that there are numerous white male employees assigned fleet vehicles that use the fleet vehicles at all times, have never been told to return the vehicles back to the district, and have never been disciplined for misuse of the vehicles.

73. For example, there are two white males who are mechanics for the school district, and none of these rules have ever been applied to them.

74. Another Caucasian gentleman who works in IT had a vehicle. When he sadly passed away, the fleet vehicle remained parked at his home for weeks! Defendant SDP did not attempt to retrieve the vehicle until his widow called Defendant SDP and asked someone to come pick up the vehicle. No disciplinary action was ever taken or suggested.

75. In addition, several white men who work in Operations keep fleet cars 7-days a week, 24 hours a day and have never been asked to return the vehicles, nor have they ever been disciplined for their misuse of company vehicles outside of regular business hours.

76. In summary, Defendants have knowingly and willfully engaged in misconduct by discriminating, defaming, and wrongfully discharging Plaintiff from her employment and/or aiding and abetting Defendant SDP.

77. As outlined above, all of the Defendants' actions relative to this matter were outside the scope of their official duties.

78. As outlined above, all of Defendants' actions described above were aiding or abetting SDP in its unlawful conduct.

79. As a result, Defendants are not immune to these claims.

80. As a result, Plaintiff has suffered damages including emotional distress, loss of income, benefits, and destruction of professional reputation.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION**
**UNDER 42 U.S.C. SECTION 1981**
**(against all named Defendants)**

81. Plaintiff incorporates paragraphs 1-80 as if fully set forth herein.

82. Pursuant to 42 U.S.C. § 1981, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

83. Defendants were employers within the meaning of the above-referenced statutes.

84. Defendants, including the School District of Philadelphia (SDP), are not immune from regulations promulgated by 42 U.S.C. § 1981.

85. Plaintiff was an employee within the meaning of the above-referenced statutes.

86. Plaintiff is a member of protected classes i.e., race (African American); age (born in 1965); and gender (female).

87. Plaintiff did not engage in any wrongful activity worthy of termination.

88. Plaintiff was denied due process on account of her race, sex and age.

89. Plaintiff suffered adverse employment action such as unlawful constructive discharge, wrongful termination, and defamation on account of her race, sex and age.

90. Plaintiff suffered disparate treatment by Defendants on account of race, sex and age.

91. Defendant SDP is liable for violations of 42 U.S.C. § 1981.

92. Defendants Shambaugh, Hite, Watlington, Naberezny, Streater, Wilkerson, and Prince, as indicated above, are also liable for violations of 42 U.S.C. § 1981.

93. As outlined above, Plaintiff was subjected to disparate treatment for her age in relation to her position and job duties as the Executive Director of Government Affairs and External Relations.

94. In her meeting with Defendant Prince, Plaintiff was disciplined for attending Defendant Watlington's inauguration, although this was an expected job duty of hers.

95. Defendant Prince is under the age of forty (40) and hired a white woman under the age of forty (40) to take over Plaintiff's job responsibilities after Plaintiff's constructive discharge.

96. Therefore, it is subject to belief that Defendant Prince was mistreating Plaintiff because of her age, which is a protected class.

97. Further, after Plaintiff's constructive discharge, she was informed that the reason for her threatened termination was due to misuse of her company vehicle.

98. None of Defendant SDP's white male employees were subjected to this treatment for documented misuse company vehicles.

99. Named Defendants individually, in aiding and abetting, are liable as accomplices to SDP in its discriminatory conduct in violation of 42 U.S.C. § 1981.

100. As a result of the foregoing, Plaintiff suffered damages including emotional distress, loss of income, benefits, and professional reputation.

**SECOND CAUSE OF ACTION**
**RETALIATION**
**UNDER 42 U.S.C. SECTION 1981**
**(against all named Defendants)**

101. Plaintiff incorporates paragraphs 1-100 as if fully set forth herein.

102. After reporting Defendant Prince's behavior to Defendant Hite, Plaintiff was subjected to retaliation under 42 U.S.C. § 1981.

103. Directly following her complaint to Defendant Hite, Plaintiff was stripped of certain job responsibilities that were then yielded to Defendant Prince, suspended without pay, and recommended for termination.

104. Defendant Hite, a male employee of Defendant SDP, coerced Plaintiff into resigning from her position with the threat of termination. This is not part of Defendant Hite's job responsibilities as Superintendent and is outside the scope of his authority.

105. Further, based on the fact that the information in the previously mentioned report was falsified for the purpose of terminating Plaintiff from her position as Executive Director of Government Affairs and External Relations, this is clear retaliation for her complaints to Defendant Hite.

106. Defendant Hite deliberately never provided Plaintiff with a copy of the report; nor did he inform her of the actual false allegations contained in the report. This action was for the purpose of constructively discharging the Plaintiff, as she was forced to believe that the information in said report was true and would lead to her termination.

107. Defendant Hite was aware and/or should have been aware at all times that the false allegations in said report did not rise to the level of termination, based on company policy, and denied Plaintiff her right to due process. It is well settled that lack of due process threatens mandates of public policy.

108. Despite three (3) separate requests for a copy of the report, Plaintiff was never given a copy, further proving that the retaliatory actions by Defendant Hite forced Plaintiff to constructive discharge.

109. Therefore, this act of retaliation on Defendant Hite's part violates 42 U.S.C. § 1981.

110. Defendant Naberezny also retaliated against Plaintiff through the act of publicly defaming Plaintiff.

111. Defendant Naberezny knowingly approved the falsified report on Plaintiff's alleged misuse of a company vehicle, despite being fully aware that Plaintiff did not work within normal business hours.

112. Further, Defendant Naberezny took things a step further and published the report against Plaintiff on a fully public website, knowing that Plaintiff was a public official, and that a report such as the one published could ruin Plaintiff's career.

113. Therefore, Defendant Naberezny further retaliated against Plaintiff by defaming her after Plaintiff's constructive discharge.

114. Plaintiff's resignation from Defendant SDP was involuntary.

115. Plaintiff's resignation was coerced by Defendant Hite.

116. As a result, Plaintiff was wrongfully terminated and constructively discharged.

117. Such conduct was wanton and willful on behalf of the defendants.

118. As a result of the foregoing, Plaintiff suffered damages including emotional distress, loss of income, benefits, and professional reputation.

### THIRD CAUSE OF ACTION
### DISCRIMINATION
### <u>UNDER PENNSYLVANIA HUMAN RELATION ACT (PHRA)</u>
### (against Defendant SDP only)

119. Plaintiff incorporates paragraphs 1-118 as if fully set forth herein.

120. The Pennsylvania Human Relation Act ("PHRA") and regulations promulgated thereafter make it an unlawful employment practice for an employer to discriminate in hiring, promotion, or retention and/or retaliate against an individual with respect to the terms and conditions or privileges of employment on the basis of race, sex and/or age.

121. Defendant is an employer within the meaning of the above-referenced statute.

122. Defendant SDP is not immune from regulations promulgated by PHRA, as stated in

123. Plaintiff was an employee within the meaning of the above-referenced statutes.

124. Plaintiff is a member of protected classes i.e., race, African American; age (1965) and gender (female).

125. Plaintiff did not engage in any wrongful activity worthy of termination.

126. Plaintiff was denied due process on account of her race, sex, and age.

127. Plaintiff suffered adverse employment action such as unlawful constructive discharge and wrongful termination on account of her race, sex, and age.

128. Plaintiff suffered disparate treatment by Defendant SDP on account of race, sex, and age.

129. Defendant SDP is liable for violations of the PHRA, as all named Defendants are liable in an individual and professional capacity.

## FOURTH CAUSE OF ACTION
## AIDING AND ABETTING
## <u>UNDER PENNSYLVANIA HUMAN RELATION ACT (PHRA)</u>
## (against all named Defendants)

130.     Plaintiff incorporates paragraphs 1-129 as if fully set forth herein.

131. Defendants Hite, Streater and Wilkerson, as indicated above, do not qualify for immunity granted by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), as is stated in § 8550, "In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply." 42 Pa.C.S. § 8550.

132. Further, PSTCA immunity of school officials is not to be applied in situations of discrimination. This is outlined in the opinion of *DiSalvio v. Lower Merion High School Dist.,* 158 F. Supp. 2d 553 (E.D. Pa. 2001), where a football coach was found to be liable for sex-based discrimination for his actions toward a female student, and a school administrator who was aware of the action was found to also be liable, despite having immunity in other situations.

133. Therefore, public school district officials are *not* entitled to qualified or absolute immunity in cases of discrimination.

134. Accordingly, in an individual and professional capacity, all named Defendants are *not* entitled to absolute immunity.

135. Defendants Hite and Naberezny are liable for aiding and abetting in Defendant SDP's discrimination and retaliation against Plaintiff.

**FIFTH CAUSE OF ACTION**
**RETALIATION**
**UNDER PENNSYLVANIA HUMAN RELATION ACT (PHRA)**
**(against Defendant SDP only)**

136. Plaintiff incorporates paragraphs 1-135 as if fully set forth herein.

137. Per the Pennsylvania Human Relation Act (PHRA), "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

138. Therefore, Defendant SDP engaged in unlawful discriminatory practices by refusing to allow Plaintiff to complete her job duties, suspending Plaintiff without pay, recommending Plaintiff for termination, and Plaintiff's constructive discharge when she was forced to resign over the contents of a falsified report.

**SIXTH CAUSE OF ACTION**
**DISCRIMINATION**
**UNDER PHILADELPHIA FAIR PRACTICE ORDINANCE (PFPO)**
**(against Defendant SDP only)**

139. Plaintiff incorporates paragraphs 1-138 as if fully set forth herein.

140. § 9-1103(A)(1) states that, "For any employer to refuse to hire, discharge, or discriminate against any person because of race, color, sex, sexual orientation, gender identity, religion, national origin, ancestry, age, handicap, or marital status with respect to tenure,

Case ID: 230401226

promotions, terms, conditions or privileges of employment or with respect to any matter

directly or indirectly related to employment."

141. Defendant SDP engaged in unlawful discriminatory practice by refusing to allow Plaintiff

to perform mandatory job duties such as appearing and speaking at public events, in an

attempt to damage her job performance so Plaintiff could be replaced with a younger

white employee.

**SEVENTH CAUSE OF ACTION**
**RETALIATION**
**UNDER PHILADELPHIA FAIR PRACTICE ORDINANCE (PFPO)**
**(against Defendant SDP only)**

142. Plaintiff incorporates paragraphs 1-141 as if fully set forth herein.

143. As stated in Philadelphi Fair Practice Ordinance § 9-3207, "Employment Discrimination"

is defined as, "… unlawful for any employer to discharge or harass any individual, or

otherwise discriminate against any individual with respect to compensation, terms,

conditions, or privileges of employment of the individual (including retaliation in any

form or manner)".

144. Defendant SDP engaged in unlawful discriminatory practices by refusing to allow

Plaintiff to complete her job duties, suspending Plaintiff without pay, recommending

Plaintiff for termination, and Plaintiff's constructive discharge when she was forced to

resign over the contents of a falsified report.

Case ID: 230401226

**EIGHTH CAUSE OF ACTION**
**DEFAMATION**
**UNDER 42. PA.C.S. SECTION 8550**
**(against Defendant SDP only)**

145. Plaintiff incorporates paragraphs 1-144 as if fully set forth herein.

146. Pursuant to 42. Pa.C.S. § 8550, Defendants Naberezny and SDP are liable for actual malice in defaming Plaintiff's reputation.

147. The report was written by the office of Inspector General and contained false accusations that Plaintiff was stealing time and illegally using a fleet vehicle. Such false accusations are defamatory.

148. The report was then published on a public website. The report was published with knowing or reckless disregard of its falsity. Further, publishing the false report to a fully public space shows actual malice **and** willful misconduct on Defendant Naberezny's part, with clear intent to call negative attention to Plaintiff and defame Plaintiff's public image, as a fellow public official who relies on her public image for her career.

149. In publishing a private report in the public domain, Defendant Naberezny was not acting within the course of her official job duties and outside the scope of her authority.

150. This constitutes actual malice.

151. The defamatory report was applied to the Plaintiff.

152. Coworkers who read the defamatory report understood the report applied to Plaintiff.

153. As proof, several coworkers alerted Plaintiff to the existence of the report detailing false accusations as though they were fact about Plaintiff's conduct in her role at Defendant SDP.

154. As further proof that it was published on a public website, Plaintiff was able to obtain a copy of the report from the website, after Plaintiff's wrongful termination. This proves

that any member of the public could access the website and therefore the report, as
Plaintiff was able to access the website without work credentials.

155. The false report caused harm to the Plaintiff's reputation and lowered her esteem in the
eyes of her colleagues.

156. The report contained false accusations imputing business misconduct to the Plaintiff.

157. As a result, it constitutes defamation *per se.*

158. As a result of the foregoing, Plaintiff suffered damages including emotional distress, loss
of income, benefits, and professional reputation, which further impeded her ability to find
a new position elsewhere.

159. Therefore, Defendant SDP is liable for defamatory remarks that were made, published,
and circulated in an attempt to destroy the career of Plaintiff after she was forced to
resign from her position due to the same lies.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendants and an
award of the following:

a. Back pay and front pay, including benefits with pre-judgment interest;

b. Compensatory damages, consequential damages and punitive damages;

c. Non-pecuniary damages, including emotional pain and suffering,
inconvenience, mental anguish, loss of enjoyment of life and humiliation;

d. Attorney's fees and costs; and

e. Any other relief this Honorable Court deems appropriate under the
circumstances.

Case ID: 230401226

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Derek Smith Law Group, PLLC.
By: */s/ J. Edward McCain III*
J. Edward McCain III, Esquire
1628 Pine Street,
Philadelphia, PA 19103

Date: March 25, 2024

Case ID: 230401226

# EXHIBIT



THE SCHOOL DISTRICT OF
**PHILADELPHIA**

**Office of Talent**
Suite 202
440 North Broad Street
Philadelphia, PA 19130
215-400-4640

February 11, 2022

Evelyn Sample-Oates
179 Birkdale Drive
Blue Bell, PA 19422-3276

EIDN: 67602

Dear Ms. Sample-Oates,

This letter is to notify you that you are suspended without pay from the School District of Philadelphia effective today, February 11, 2022. You will remain suspended without pay pending approval of termination by the Board of Education on February 24, 2022.

Your insurance benefits will continue through the last day of the month, if applicable.

You are required to return all School District of Philadelphia owned and issued property, including but not limited to ID, keys, laptop, etc. immediately.

Sincerely,

Larisa Shambaugh
Chief Talent Officer

# EXHIBIT





Filed and Attested by the
Office of Judicial Records
25 MAR 2024 04:46 pm
S. RICE

EXHIBIT TO FOURTH AMENDED COMPLAINT –

OFFICE OF THE INSPECTOR GENERAL
SCHOOL DISTRICT OF PHILADELPHIA
INVESTIGATIVE REPORT SYNOPSIS

**<u>FILED UNDER SEAL</u>**



Filed and Attested by the
Office of Judicial Records
25 MAR 2024 04:45 pm
S. RICE

## VERIFICATION

I, **Evelyn Sample-Oates**, hereby state:

1.    I am a plaintiff in this action;

2.    I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; and

3.    I understand that the statements in said Complaint are subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

*Evelyn L. Sample Oates*

DATED - 03/25/2024